IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DELAWARE LIFE INSURANCE COMPANY OF NEW YORK, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:22-cv-0275-L |
| RETIREMENT VALUE, LLC, | § § | |
| *Defendant.* | § § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Plaintiff Delaware Life Insurance Company of New York ("Delaware Life"), through undersigned counsel, hereby submits this Response to the Motion of Defendant Retirement Value, LLC ("Defendant" or "Retirement Value") for Summary Judgment and supporting Brief and respectfully shows the Court as follows:

**I.    SUMMARY**

In 2005, Sun Life Insurance and Annuity Company of New York ("SLNY") issued two policies insuring the life of Lilly Segal (Policy No. 040000495 with a face amount of $1,500,000; and Policy No. 040000652 with a face amount of $500,000), each with Herman Segal (Lilly Segal's son) named as the initial owner and beneficiary of the Policy.  The SLNY policies insuring the life of Lilly Segal will hereinafter be referred to collectively as the "Segal Policies."  In 2012, Retirement Value became the owner and beneficiary of each of the Segal Policies.  Retirement Value is currently in receivership, with Eduardo S. Espinosa (the "Receiver") having been appointed as Receiver for Retirement Value.  In 2013, SLNY became Delaware Life.

In September 2019, Sun Life Assurance Company of Canada ("Sun Life") as administrator for the Segal Policies on behalf of Delaware Life received telephonic notice that Lilly Segal had

supposedly died on June 15, 2019.  Subsequently, the Receiver submitted an incomplete death claim for the Segal Policies that failed to include a death certificate for Lilly Segal.  In subsequent correspondence from September 2019 through August 2021, Sun Life repeatedly informed and reminded the Receiver that a death certificate for Lilly Segal was required for the death claim to be processed.  In July 2021, the Receiver maintained to Sun Life that Lilly Segal had allegedly changed her name on April 13, 2017 from Lilly Segal to Sprinta Berger and that the Receiver was in possession of a death certificate for Sprinta Berger.  The Receiver subsequently provided a copy of the death certificate for Sprinta Berger which purportedly provided Sprinta Berger's social security number, date of birth, date of death, and address of residence at the time of her death.  Sun Life promptly informed the Receiver that there were several discrepancies between the insurer's records for Lilly Segal and the death certificate for Sprinta Berger, which raised questions as to (i) whether Lilly Segal was, in fact, Sprinta Berger; and (ii) whether Lilly Segal was, in fact, deceased.

In response, the Receiver acknowledged to Sun Life that "[w]e recognize that there are dots that need connecting here, largely due to Herman [Segal's] attempt to hide his mother's demise."  In September 2021, the Receiver submitted supplemental documentation, which contained further discrepancies.  Through its investigation, Sun Life was not able to resolve these discrepancies.

Consequently, on February 3, 2022, Delaware Life filed its Complaint seeking a declaratory judgment as to whether the Receiver had provided sufficient proof that a death has occurred on the Segal Policies as required under the terms of the Segal Policies and whether death benefits are consequently payable under the Segal Policies.  On March 4, 2022, Defendant filed its First Amended Counterclaim seeking a judicial declaration that Lilly Segal is the same person as Sprinta Berger, that Lilly Segal is deceased, and that Delaware Life is obligated to pay

Defendant the death benefits under the Segal Policies.  On March 22, 2022, Defendant moved for summary judgment, relying on several documents that were not available to, and were not provided to, Sun Life before Delaware Life brought this legal action seeking the aforementioned declaration. Although Delaware Life acknowledges that—since this legal action was filed and in support of this pending summary judgment motion—Defendant has provided this Court with additional evidence in the form of the Declarations of Messrs. Donofrio and Damm and Dr.  Inzlicht-Sprei in support of Defendant's assertions that (i) Lilly Segal is Sprinta Berger; and (ii) Lilly Segal, the insured, is deceased, the discrepancies (described above) still exist.  Consequently, Delaware Life requests a declaratory judgment declaring (i) whether Lilly Segal (with a birthdate of **[REDACTED]**, 1926),[1] the named insured under the Segal Policies, is Sprinta Berger—identified in the Death Certificate as having died on November 7, 2018; (ii) whether due proof of death as required under the terms of the Segal Policies has been provided; and (iii) whether death benefits are payable under the Segal Policies.

## II.   DELAWARE LIFE'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Delaware Life provides the following Response to the like-numbered paragraphs included in Defendant's Statement of Undisputed Material Facts ("DSUMF"):

1.      Admitted.

2.      Admitted.

3.      Admitted.

---

[1] In accordance with Fed. R. Civ. P. 5.2(a)(2), Delaware Life has redacted the day and month of birth for Lilly Segal and Sprinta Berger.  Pursuant to Local Rule 79.3, Delaware Life intends to separately file an un-redacted copy of this Response under seal that will contain the birthdates for Lilly Segal and Sprinta Berger in order to show the full extent of the discrepancy between the two birthdates, which is approximately 26 months.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Denied as stated.  Admitted that, on or about January 31, 2017, a Verified Complaint for a Certification for a Name Change was filed in the New Jersey Superior Court, Law Division, Docket No. L-240-17 (the "Name Change Proceeding") purportedly seeking a name change for Lilly Segal to Sprinta Berger, but that a different birthdate (**[REDACTED]**, 1924) and different social security number (**[REDACTED]**-5373) were provided for Sprinta Berger than the birthdate (**[REDACTED]**, 1926) and social security number (**[REDACTED]**-5372) provided for Lilly Segal in the insurance Application.  *Compare* DAPP86 (Verified Complaint in Name Change Proceeding) with DAPP30 (providing **[REDACTED]**, 1926 birthdate and a social security number of **[REDACTED]**-5372 for insured Lilly Segal in response to Questions 1d and 1f in Application).[2]  Except as herein admitted, the remainder of this paragraph of the DSUMF is denied as unsupported by the record.

11.     Denied as stated.  Admitted that James Donofrio has provided a Declaration stating that he purportedly retrieved the body of someone whom Herman Segal purportedly identified as his mother and that Mr. Segal purportedly provided the name of Sprinta Berger and her purported

---

[2] In accordance with Fed. R. Civ. P. 5.2(a)(1), Delaware Life has redacted the first five digits of the social security numbers for Lilly Segal and Sprinta Berger.  Pursuant to Local Rule 79.3, Delaware Life intends to separately file an un-redacted copy of this Response under seal that will contain the full social security numbers for Lilly Segal and Sprinta Berger in order to show the full extent of the discrepancy between the two numbers, which is not limited to just the last four digits.

birthdate and social security number which was included on the form annexed as Exhibit A and the death certificate for Sprinta Berger annexed as Exhibit B to his Declaration, but those documents provide a birthdate (**[REDACTED]**, 1924) and social security number (**[REDACTED]**-5373) different than the birthdate (**[REDACTED]**, 1926) and social security number (**[REDACTED]**-5372) provided for Lilly Segal in the insurance Application.  *Compare* DAPP100, 103 with DAPP30 (providing **[REDACTED]**, 1926 birthdate and a social security number of **[REDACTED]**-5372 for insured Lilly Segal in response to Questions 1d and 1f in Application.  Admitted that Dr. Eli Inzlicht-Spreil states, in his Declaration, that he attended the decedent at her death and signed the Death Certificate, which is enclosed as Exhibit 1 to his Declaration, but that the same death certificate (as provided by Mr. Donofrio) contains the same discrepancies.  *Compare* DAPP79 to DAPP30.  Except as herein admitted, the remainder of this paragraph of the DSUMF is denied as unsupported by the record.

12.    Denied.  In his Declaration, Mr. Donofrio stated that he used the name Sprinta Berger in the document because Herman Segal stated that his mother had changed her name to Sprinta Berger.  Except as herein admitted, the remainder of this paragraph of the DSUMF is denied as unsupported by the record.

13.    Denied as stated.  Admitted that, in his Declaration, Mr. Donofrio states that, on November 7, 2018, Herman Segal purportedly called Rabbi Hartman, an employee of the Jewish Funeral Services of Brooklyn (the "Funeral Home") to notify the Rabbi and the Funeral Home that Mr. Segal's mother had purportedly passed away at Mr. Segal's home.  Except as herein admitted, the remainder of this paragraph of the DSUMF is denied as unsupported by the record.

14.    Denied as stated.  Admitted that, in his Declaration, Mr. Donofrio states that (i) he purportedly went in person to retrieve the body of the person that Herman purportedly identified

as his mother at Mr. Segal's Brooklyn home; and (ii) while he was purportedly at Mr. Segal's home, Mr. Segal purportedly provided him with identifying information for his mother including her name (Sprinta Berger), birthdate and social security number, which he included on the form enclosed as Exhibit A to his Declaration and that the same information was included in the death certificate enclosed as Exhibit B to his Declaration, but, as set forth in Delaware Life's Response to Paragraph 11 above, the birthdate and social security number provided in those documents is different than provided for Lilly Segal in the insurance Application.  Except as herein admitted, the remainder of this paragraph of the DSUMF is denied as unsupported by the record.

15.     Admitted that, in his Declaration, Richard J. Damm, Jr. states that (i) a licensed funeral director for the Funeral Home purportedly presented a transit permit providing for the interment of Sprinta Berger at Beth David Cemetery; (ii) on the same day, Mr. Donofrio purportedly arranged for the burial of Sprinta Berger in the Burial Grounds of Yeshiva Rabbi Chaim Berlin, in Beth David Cemetery, in a gravesite located beside the grave of Szmul David Ben Y'Israel Halevy Segal (Samuel David son of Israel Halevy Segal); and (iii) Szumul Segal's grave is purportedly beside that of Y'Israel Ben Shmuel David Segal Halevy (Israel son of Samuel David Segal Halevy).  Except as herein admitted, the remainder of this paragraph of the DSUMF is denied as unsupported by the record.

16.     Denied as stated.  Admitted that the Receiver provided Delaware Life with a Death Claim Submission and with a death certificate for Sprinta Berger, but as the Receiver was informed in response to these submissions, there were discrepancies (as set forth in greater detail above in Delaware Life's Response to Paragraph 11 of the DSUMF) in the birthdate and social security number provided for Lilly Segal in the Insurance Application.  Except as herein admitted, the remainder of this paragraph of the DSUMF is denied as unsupported by the record.

17.     Admitted.

18.     Admitted.

19.     Denied as stated.   Admitted that Retirement Value seeks judgment on its declaratory judgment counterclaim.  Except as herein admitted, the remainder of this paragraph of the DSUMF is denied as unsupported by the record.

### III.     DELAWARE LIFE'S COUNTERSTATEMENT OF FACTS

1.     On August 15, 2005, Sun Life Insurance and Annuity Company of New York ("SLNY") issued policy number 040000495 in the face amount of $1,500,000 insuring the life of Lilly Segal with Herman Segal (Lilly Segal's son) as the initial owner and beneficiary of the Policy.  *See* Declaration of Michelle Wilkosky ("Wilkosky Decl."), ¶ 2; DAPP4-37.

2.     On August 15, 2005, SLNY issued policy number 040000652 in the face amount of $500,000 insuring the life of Lilly Segal, with Herman Segal (Lilly Segal's son) as the initial owner and beneficiary of the Policy.  Wilkosky Decl., ¶ 3; DAPP38-74.  The $1,500,000 and $500,000 SLNY policies insuring the life of Lilly Segal will hereinafter be referred to collectively as the "Segal Policies."

3.     In 2012, Retirement Value, LLC became the owner and beneficiary of the Segal Policies.  Wilkosky Decl., ¶ 4.

4.     In 2013, SLNY became Delaware Life Insurance Company of New York ("Delaware Life").  Wilkosky Decl., ¶ 5.

5.     Section 9 of the Segal Policies provides that "[t]he Policy Proceeds will be paid in a lump sum upon receipt of Due Proof of the Insured's Death," with "Due Proof" defined as "[s]uch evidence as we may reasonably require in order to establish that Policy Proceeds or any other

benefits are due and payable."  Wilkosky Decl., ¶ 6; DAPP25, 60 (Benefits at Death) and DAPP15, 49 (definition of "Due Proof").

6.       On or about September 25, 2019, Sun Life Assurance Company of Canada ("Sun Life") as administrator of the Segal Policies on behalf of Delaware Life received telephonic notice that Lilly Segal had supposedly died on June 15, 2019.  Wilkosky Decl., ¶ 7.

7.       On or about October 9, 2020, Eduardo Espinosa, the Receiver for Retirement Value submitted to Delaware Life a partial death claim submission on the Segal Policies, which included a Death Claim Submission form signed by the Receiver, but did not include a Death Certificate evidencing the death of Lilly Segal.  Wilkosky Decl., ¶ 8.

8.       In multiple correspondence and communications starting on September 27, 2019 and continuing through August 2021, Sun Life repeatedly informed and reminded the Receiver that a Death Certificate for Lilly Segal was required for the death claim to be processed.   Wilkosky Decl., ¶ 9.

9.       On or about July 9, 2021, the Receiver informed Sun Life (through its legal counsel) that Lilly Segal had supposedly undergone a name change (changing her name on April 13, 2017 to Sprinta Berger) and that the Receiver was in possession of a death certificate for Lilly Segal under her new name (Sprinta Berger).  Sun Life was never notified of the name change on or about the time it purportedly occurred.  Wilkosky Decl., ¶ 10.

10.       The Receiver thereafter provided to Delaware Life a copy of a Death Certificate for Sprinta Berger issued by the New York Department of Health and Mental Hygiene which purportedly provided Sprinta Berger's (i) social security number; (ii) birthdate; (iii) date of death; and (iv) residence address, at the time of her death, of 24 Fairway Drive in Green Brook, New Jersey.  Wilkosky Decl., ¶ 11, Exh. A.

11.     On or about July 12, 2021, Sun Life's Counsel informed the Receiver that there were several discrepancies between the insurer's records for Lilly Segal and the Death Certificate for Sprinta Berger, which raised questions as to whether Lilly Segal was, in fact, Sprinta Berger and whether Lilly Segal was deceased.  These discrepancies included (i) approximately a two year and two month difference in the stated birthdates for Lilly Segal and Sprinta Berger; and (ii) different stated social security numbers for Lilly Segal and Sprinta Berger.  Wilkosky Decl., ¶ 12, Exh. B.

12.     In response, on or about July 14, 2021, the Receiver informed Sun Life's Counsel that "[w]e recognize that there are dots that need connecting, largely due to Herman [Segal's] attempt to hide his mother's demise."  Wilkosky Decl., ¶ 13, Exh. B.

13.     On or about September 14, 2021, the Receiver sent Delaware Life "supplemental information regarding Retirement Value's claim for death benefits" on the Segal Policies.  The supplemental information included (i) a Certificate of Naturalization for Lenka (also known as Lilly according to the Receiver) Segal; (ii) a Social Security Card for Lilly Segal; (iii) a New York Driver's License for Lilly Segal; (iv) a Verified Complaint for a Name Change purportedly to change Lilly Segal's name to Sprinta Berger; and (iv) an April 25, 2017 Final Judgment for a name change for Sprinta Berger.  Wilkosky Decl., ¶ 14, Exh. C.

14.     Based upon its review of the aforementioned documentation, Sun Life concluded that, although it appeared that an individual named Sprinta Berger had died, there were still unresolved, significant inconsistencies in the aforementioned documentation which called into question whether Sprinta Berger was, in fact, Lilly Segal, whether Lilly Segal is deceased, and therefore whether a death benefit is payable on the Segal Policies.  These discrepancies included the following:

     i.    the application for the Segal Policies, the Driver's License for Lilly Segal, and the Certificate of Naturalization for Lenka Segal provide a birthdate that is two years and two months different than the birthdate provided in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger;

    ii.    the application for the Segal Policies and the Social Security Card for Lilly Segal provide a social security number that is different than that in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger; and

    iii.    the notification of death provided to Sun Life for Lilly Segal stated that Ms. Segal died on June 15, 2019, but the Sprinta Berger Death Certificate has a date of death of November 7, 2018.

Wilkosky Decl., ¶ 15.

15.    Sun Life's investigation also revealed additional inconsistencies, which further called into question whether Sprinta Berger was, in fact, Lilly Segal. In this regard, Sun Life's investigation into the residence address of 24 Fairway Drive, Green Brook, New Jersey—included in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger—did not reveal any connection between Lilly Segal or Sprinta Berger or anyone with those surnames with the stated residence address. Wilkosky Decl., ¶ 16.

16.    Also, Sun Life's research revealed that the social security number—provided in the Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger—belongs to an individual who is reportedly alive and residing in Florida, and who has no obvious relationship to Lilly Segal. Wilkosky Decl., ¶ 17.

17.    The Receiver also acknowledged, in writing, that multiple discrepancies exist and that his proof that Sprinta Berger was Lilly Segal and that Lilly Segal is deceased may be insufficient in that:

    i.    in his aforementioned September 14, 2021 correspondence to Sun Life, the Receiver stated that "we were unable to locate any record of Lilly Segal or Sprinta

Berger using the social security number and/or birthdate provided for in the Death Certificate"; and

ii.     in an August 18, 2021 Motion filed in the Receivership Action, the Receiver stated that (i) he hired a private investigator, but the private investigator was "unable to determine definitively whether LS [Lilly Segal] was dead or alive and, if dead, where she died"; (ii) "[w]hile the publicly available information—the death certificate and announcement of name change from LS [Lilly Segal] to SB [Sprinta Berger]—is significant, it is likely not enough to satisfy insurers.  For example, the Receiver is still faced with the task of establishing that the LS [Lilly Segal] who changed her name to SB [Sprinta Berger] in New Jersey is the same person as the insured . . . ."

Wilkosky Decl., ¶ 18, Exhs. C at 2 and D at 5.

17.     Accordingly, Delaware Life commenced this legal action seeking a declaration "whether Retirement Value has provided sufficient proof that a death has occurred on the Segal Policies, [and] whether death benefits are consequently payable under the Segal Policies."  *See* Complaint, Count I and Prayer for Relief.

18.     In its Motion, Defendant relies upon several documents *that were not available to, and not provided to, Delaware Life before it brought this legal action* seeking the aforementioned declaration.  These documents include the following:

i.      The Declaration of Dr. Eli Inzlicht-Sprei (DAPP76-77);

ii.     The Declaration of James Donofrio and the enclosed Exhibits A and C (DAPP97-105); and

iii.    The Declaration of Richard J. Damm Jr. and the enclosed Exhibit A (DAPP107-113).

Wilkosky Decl., ¶ 20.

## IV.     <u>ARGUMENT</u>

Delaware Life brought this legal action because, as set forth in detail above, the documentation and information provided by the Receiver for Defendant Retirement Value—and Sun Life's own investigation into Retirement Value's death claim on the Segal Policies insuring

the life of Lilly Segal—raised significant questions regarding (i) whether Lilly Segal was the decedent, Sprinta Berger; (ii) whether "Due Proof of Death" of the insured had been provided as required under Section 9 of the Segal Policies; and (iii) consequently, whether death benefits were payable under the Segal Policies.  There were several discrepancies in this documentation and information which, as set forth in greater detail above, included:

    i.     a birthdate for Lilly Segal (**[REDACTED]**, 1926) in the application for the Segal Policies, the Driver's License for Lilly Segal, and the Certificate of Naturalization that is two years and two months different than the birthdate provided for Sprinta Berger (**[REDACTED]**, 1924) in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger;

    ii.    a social security number in the application for the Segal Policies and the Social Security Card for Lilly Segal (with a social security number of **[REDACTED]**-5372) that is different than the social security number (**[REDACTED]**-5373) in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger;

    iii.   a social security number for Sprinta Berger (**[REDACTED]**-5373) in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger that appears to belong to an individual who is reportedly alive and residing in Florida;

    iv.   the notification of death provided to Sun Life for Lilly Segal stated that Ms. Segal died on June 15, 2019, but the Sprinta Berger Death Certificate has a date of death of November 7, 2018; and

    v.    no known connection between Lilly Segal or Sprinta Berger or anyone with those surnames and the residence address (24 Fairway Drive, Green Brook, New Jersey) included in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger.

Before this lawsuit was filed, Eduardo Espinosa, the Receiver for Retirement Value, acknowledged that there were discrepancies calling into question whether (i) Lilly Segal was Sprinta Berger; (ii) Lilly Segal, the insured, was deceased; and (iii) whether he had sufficient proof of death to collect the death benefits under the Segal Policies.  In this regard, the Receiver acknowledged in communications with Sun Life's counsel that "[w]e recognize that there are dots

that need connecting, largely due to Herman [Segal's] attempt to hide his mother's demise." Moreover, in a receivership filing, the Receiver reported to the receivership court that (i) a private investigator that he had hired was "unable to determine definitively whether LS [Lilly Segal] was dead or alive and, if dead, where she died"; and (ii) "[w]hile the publicly available information— the death certificate and announcement of name change from LS [Lilly Segal] to SB [Sprinta Berger]—is significant, it is likely not enough to satisfy insurers.   For example, the Receiver is still faced with the task of establishing that the LS [Lilly Segal] who changed her name to SB [Sprinta Berger] in New Jersey is the same person as the insured . . . ."  Accordingly, Delaware Life had compelling and justifiable reasons for initiating this legal action seeking a declaration from this Court "whether Retirement Value has provided sufficient proof that a death has occurred on the Segal Policies, [and] whether death benefits are consequently payable under the Segal Policies."

Although Delaware Life acknowledges that—since this legal action was filed and in support of this pending summary judgment motion—Defendant has provided this Court with additional evidence in the form of the Declarations of Messrs. Donofrio and Damm and Dr. Inzlicht-Sprei in support of Defendant's assertions that (i) Lilly Segal is Sprinta Berger; and (ii) Lilly Segal, the insured, is deceased, the discrepancies (described in detail above) still exist.   In this legal action, both parties seek declaratory relief and are in need of a declaration and determination by this Court whether (notwithstanding these significant discrepancies) the evidence and proofs offered by the Defendant are sufficient proof of the insured's death and whether a death benefit is payable under the Segal Policies.

## V.   <u>PRAYER</u>

WHEREFORE, Delaware Life respectfully prays for relief and a declaratory judgment declaring (i) whether Lilly Segal (with a birthdate of **[REDACTED]**, 1926), the named insured under the Segal Policies, is Sprinta Berger—identified in the Death Certificate as having died on November 7, 2018; (ii) whether due proof of death as required under the terms of the Segal Policies has been provided; and (iii) whether death benefits are payable under the Segal Policies.

Respectfully submitted,

*/s/ Christopher J. Hanlon*
Christopher J. Hanlon
Attorney-In-Charge
State Bar No. 24065367
E-mail: chanlon@cozen.com
COZEN O'CONNOR
1717 Main Street
Suite 3100
Dallas, Texas  75201
Telephone: (214) 462-3048
Telecopier: (214) 462-3299

**ATTORNEYS FOR PLAINTIFF**
**DELAWARE LIFE INSURANCE**
**COMPANY OF NEW YORK**